

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-78,113-01

## EX PARTE HUMBERTO GARZA, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. CR-3175-04-G(1) IN THE 370TH DISTRICT COURT
## HIDALGO COUNTY

**KELLER, P.J., filed a dissenting opinion in which SLAUGHTER, J., joined.**

Applicant has not shown that his mitigating evidence would have caused a different balance to be struck on the mitigation special issue so as to spare Applicant's life.[1] While Applicant has presented some significant mitigating evidence, it does not come close to balancing out the aggravating evidence. The aggravating evidence against Applicant was and is overwhelming. The facts of the offense were particularly heinous. As a high ranking member of the Tri-City Bomber gang—the local captain—he planned and orchestrated the killing of six rival gang members. All six died of gunshot wounds, with most of the victims having been shot in the head. They were killed as part of a complex "pseudo-cop" robbery to steal their marijuana. Applicant recruited the gang

---

[1] *See Ex parte Gonzales*, 204 S.W.3d 391, 393-94 (Tex. Crim. App. 2006).

participants (some with known violent records), procured firearms, planned the crime, and coordinated the participants' execution of the job.[2]

Applicant also had an extensive and violent criminal record. At age 15, he committed the offense of unauthorized use of a motor vehicle and was placed on probation. He also committed the offense of terroristic threat. He later violated the conditions of probation and was committed to TYC. A few days before his seventeenth birthday, he committed the offense of attempted murder by stabbing a man during an altercation. Less than three weeks after being certified to be tried as an adult on that offense, he committed burglary of a habitation. Several unadjudicated offenses were taken into account in disposing of the attempted murder case—two aggravated assaults, theft of stolen property, and attempted burglary of a habitation. While in TDCJ for the attempted murder and burglary offenses, he committed several disciplinary infractions, including repeated fights and stabbing another inmate with a handmade weapon. After being on parole for less than a year, he committed the instant offense. Applicant continued committing crimes despite his participation in various intervention programs and despite his family members' offers of emotional support, spiritual guidance, employment, a truck, and substance abuse counseling.

Applicant's TYC records and experts' statements describe his rebellious enjoyment of the "thrills and excitement of breaking the law," his lack of remorse for an attempted murder, his angry outbursts, "strong antisocial behaviors," verbal abuse of his mother and girlfriend, and the likelihood that he would present a "disciplinary problem" in the future. Evidence also indicates that Applicant has idolized his violent, drug-dealing father. In 2013, when Applicant was incarcerated for this

---

[2] The gang members Applicant sent had a "green light" to engage the rival gang, and Applicant knew that two of his recruits had committed unauthorized murders during a similar heist on an earlier occasion.

capital murder, he told his psychiatrist, Richard Adler, that his then-deceased father's personality had been "awesome . . . a fun person to be with," and he described his father as "a great person."

Although Applicant has presented evidence that suggests his parents neglected him, used severe disciplinary methods, set a bad example for him, and made other mistakes, his evidence that his parents spoiled him with material possessions sounds like he is also making some kind of "affluenza" claim. At any rate, these parenting blunders pale in comparison to the mistreatment suffered by other applicants who have had their death sentences overturned.[3] And Applicant enjoyed the support of several extended family members, who offered emotional support, spiritual guidance, and employment opportunities.

Although Applicant has been diagnosed with a type of FASD, PTSD, and Persistent Depressive Disorder, the TYC records document that Applicant did not exhibit a mental disorder that would impair his judgment or reasoning abilities. Applicant has also now presented evidence that he was sexually molested on two or three occasions at age five or six by a thirteen-year-old aunt. Although this is significant, adding this circumstance to the other habeas mitigating evidence still would not give rise to a reasonable probability that even one sentencing juror would answer the mitigation special issue in Applicant's favor. If the evidence Applicant has now presented is enough

---

[3] *See e.g. Rompilla v. Baird*, 545 U.S. 374, 392 (2005) (Father locked Rompilla and his brother "in a small wire mesh dog pen that was filthy and excrement filled. [Rompilla] . . . was not allowed to visit other children or to speak to anyone on the phone. They had no indoor plumbing in the house, he slept in the attic with no heat, and the children were not given clothes and attended school in rags."); *Gonzales*, 204 S.W.3d at 395 (Gonzales's father forced him to perform oral sex on him weekly beginning when he was less than six years old and had anal intercourse with him weekly from the time he was seven years old. Gonzales's father was also physically abusive and threatened to kill Gonzales and his mother if he ever told anyone about the abuse.).

to entitle this gang-leading, lifelong-criminal, murderer of six to a new punishment hearing, it is hard to imagine it being insufficient in any case.

I respectfully dissent.

Filed: April 14, 2021
Publish